SYKES v. ROBBINS.

(Circuit Court of Appeals, Eighth Circuit. September 7, 1903.)

No. 1,912.

1. VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT—REFUSAL OF VENDOR TO PERFORM.

Complainant contracted to sell to defendant a large quantity of land, the contract containing the following provision: "If any title to any part of said real estate shall prove defective, and cannot be perfected within one year, and render the same unmarketable, so that the vendee cannot accept the same, then said parcel shall be withdrawn from this sale. * * *" Held, that such provision bound complainant to use, in good faith, such efforts as were reasonable to perfect his title to all the lands within the year; and that conceding that, in case such efforts failed as to any of the lands, he had the right to withdraw them from the contract, he could not avail himself of his inability to make title at the end of the year to avoid the contract, where such inability resulted solely from his own action in instituting a suit to set aside prior tax sales of the lands, instead of redeeming from the same, when, in the nature of things, such suit could not be finally determined within the year; and especially where, subsequent to the making of the contract, he obtained advances from defendant thereon for the purpose of clearing the land of incumbrances, and defendant had agreed, if necessary, to extend the time for perfecting the title, apparently upon an agreement or understanding between the parties that the incumbrance of taxes should be removed by suit.

Appeal from the Circuit Court of the United States for the District of North Dakota

Seth Newman (Burleigh F. Spalding and Winfield S. Stambaugh, on the brief), for appellant.

John S. Watson (W. F. Ball and D. G. Maclay, on the brief), for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge. Under date of April 1, 1901, the appellant, Richard Sykes, entered into a contract with the appellee, Daniel M. Robbins, whereby he agreed to sell and convey to the latter certain lands in the county of Stutsman, N. D., containing 20,720 acres, at the price of $2.75 per acre, of which the sum of $2,000 was to be paid in cash upon the execution of the contract, and the further sum required to make a cash payment of $1 per acre to be paid as soon as a good marketable title in fee simple, free of incumbrances, was shown in the vendor, when deed was to be delivered to the purchaser, by whom a mortgage was to be given to secure the payment in five years of the balance of the purchase price, with interest at 5 per cent. per annum; it being further provided that "if any title to any part of said real estate shall prove defective, and cannot be perfected within one year, and render the same unmarketable, so that the vendee cannot accept the same, then said parcel shall be withdrawn from this sale, and the only damages to vendees under this contract shall be the return to them of all moneys paid on such parcel, together with interest thereon of 5 per cent. per annum. * * *"

125 F.—28

When this contract was entered into the title to none of the lands described therein was clear and perfect on the record in the appellant, the First National Bank of Fargo holding the title to 4,224 acres as security, 1,600 acres being held by third parties by title absolute, and of the remainder the record title was in the appellant, F. L. Pirie, and the estate of Findlay Dunn, deceased, and all the lands, except the 4,224 acres held as security by the First National Bank, had been sold for taxes.

Without going into the details, it may be said that such steps were taken that the title to the land held by the bank was conveyed to the purchaser, the interest held by Pirie and the estate of Findlay Dunn was procured by the appellant, and with the exception of 1,600 acres, the title to which could not be procured, the land was cleared of all adverse claims except that created by the levy of taxes thereon and the sale following the failure to pay the same. With respect to these taxes the appellant refused to clear the land by the payment thereof, but, claiming that the same were not valid liens on the realty, he brought suits at the December term, 1901, of the district court of Stutsman county, N. D., against W. H. Beck and ——— Allen, the owners of the tax sale certificates, and Stutsman county, asking that the levy of the taxes and the sales based thereon be declared null and void, and on the 5th of March, 1902, that court handed down an opinion to the effect that the levy of taxes and the sales based thereon were void. From the judgments and decrees following this opinion an appeal was taken in due season to the Supreme Court of North Dakota, which had not been disposed of when the present suit was begun, nor at the date of the trial in the court below.

Under the date of March 31, 1902, the appellant addressed a letter to the appellee, in which he states:

"Judge Glaspell's judgment in the suits brought by me in the district court, Stutsman Co., N. D., against Mess. Allen & Beck, is in my favor, and cancels & annuls all taxes for 1897 to 1900. * * * I am unable, however, to offer you a marketable title to these lands, because the defendants have the right to appeal within 12 months from 13th March, 1902, being the date of record of the judgments. It appears to me, however, that the title is now such that you might accept it, and I should be pleased to hear from you whether or not you can do so at the present time."

At a personal interview between the parties, on the 5th of April, the appellant urged the appellee to accept the title as it then stood, claiming that the tax question was virtually closed by the judgment of the district court of Stutsman county; but the appellee declined to close the deal, by paying for the land, until the tax matter was put at rest either by the failure to appeal the case or by a disposition of the case on appeal.

On the 5th day of April, 1902, the appellant wrote as follows to the appellee:

"Dear Sir: Referring to our interview today, at which you again refused to accept the title to the following lands, I hereby withdraw them from the sale of 1st April, 1901: [Here follows description of lands.] As the agreement above referred to has been recorded, I enclose quitclaim deed, which I hope you will execute and forward to me at Waldorf Hotel, Fargo, N. D. I enclose one dollar to cover the expense of the deed."

To this letter the appellee, under date of April 7, 1902, sent the following reply:

"Dear Sir: I am in receipt of your letter of the 5th enclosing $1 and asking me to sign a quitclaim deed on certain lands. I return the dollar, as I am unwilling to sign the deed, as I expect to take the lands when you can perfect the title to them. When you advised me that you could not perfect the title as soon as expected, I agreed to extend the time so that you should have ample time and opportunity to perfect the same. In regard to the tax title, you had abundant time in which to redeem the lands, and were furnished money, which it was understood was to be used in perfecting the title to the same. You certainly can have no moral or legal right to take advantage of your own laches in failing to redeem from the tax sale when you had abundant time and opportunity to do so. I trust you will get the matter straightened out as soon as possible, as I am desirous of closing the matter up in accordance with the contract."

Upon the receipt of this letter the appellant at once brought suit in equity in the district court of Cass county to quiet the title to the land included in the tax sales, and to remove the cloud upon the title thereto created by the contract of sale of April 1, 1901, which had been duly recorded in Stutsman county, and in the bill filed, after setting forth the contract of sale, it is averred by the appellant:

"That, during the year provided in said contract for perfecting the title to any of said tracts of land, the plaintiff perfected the title to the following tracts, and caused the same to be conveyed to the defendant under and pursuant to the terms of said contract, to wit, all * * * [here follows the description of the 4224 acres formerly held by the Fargo Bank]. That the title to the remainder of said land not so as aforesaid conveyed to the defendant was imperfect, in this, to wit, that it was clouded by certain tax sales and tax certificates issued by the auditor of said Stutsman county thereunder, which said sales and tax certificates were void, and this plaintiff, as soon as practicable after he had ascertained that there existed clouds upon the title to said land, caused actions to be commenced in the district court of the state of North Dakota, in and for the county of Stutsman, to vacate and set aside all such tax sales and tax certificates, and prosecuted said actions to judgment with diligence, and such proceedings were therein had that on the 10th day of March, 1902, judgments were given and rendered in said actions, vacating and setting aside the said taxes, tax sales, and tax certificates upon said lands which were so as aforesaid clouds upon the title of this plaintiff, and on or about said date notice of entry of said judgment were served upon the defendants in said actions, and the time for appeal from such judgments will expire on or about the 10th day of March, 1903."

—The prayer being that the contract of sale, so far as it affected the lands not conveyed to the defendant, be declared to be of no effect, and that the cloud created by the contract be removed, and the title be quieted in complainant.

Upon the application of the defendant, who was a citizen of the state of Minnesota, the suit was removed into the United States Circuit Court for the district of North Dakota, and the defendant filed an answer and also a cross-bill, wherein he prayed a decree for the specific performance of the contract of sale on part of the vendor.

In the answer and cross-bill the defendant set forth at length the contract of sale, averring that under its terms it was the duty of the complainant to pay up the taxes assessed upon the land, or to otherwise protect the title thereto against the said taxes, and the sales based thereon, and further showing that after the rendition of the judgments in the district court of Stutsman county holding the tax

sales and certificates to be void, and in view of the doubt and uncertainty that existed touching the final outcome of the question involved, he caused a purchase to be made, in the name of John Wyman, of the tax certificates, such purchase being made to protect his interest in said lands, and not with any purpose to interfere with or burden the title of the complainant, he being willing that the benefit of such purchase should be availed of by complainant, in case it should be finally determined that the land was subject to the taxes in question; it being further averred that on or about June 14, 1901, by agreement with the complainant, the defendant, in addition to the $2,000 paid upon the execution of the contract of sale, advanced to the complainant the further sum of $8,500 to be used by the complainant in clearing off the incumbrance on the lands contracted to be sold. It is also averred in the cross-bill that on the 9th of July, 1902, the defendant tendered to the complainant the sum of $10,397.42 in cash, and his promissory notes for the further sum of $36,260, with a mortgage securing the sum upon the lands included in the contract of sale, and demanded from the said complainant the execution and delivery to the defendant of a proper deed of conveyance of the lands in dispute, which tender and demand was refused by complainant, and this tender is repeated in the cross-bill, the cash, notes, and mortgage being brought into court to secure the fulfillment thereof.

The evidence being taken, the circuit court decided the case on the merits, ordering a decree dismissing complainant's bill, and granting a decree upon the cross-bill, holding that the defendant was entitled to specific performances of the contract of sale, except as to 1,600 acres, the title to which was not in complainant; and the decree further provides for the retention of $5,500 from the cash payment to be made by the defendant awaiting the action of the Supreme Court of North Dakota, upon the suits involving the validity of the taxes, and also directs the steps to be taken by defendant in carrying out the obligation resting on him as purchaser under the contract of sale.

The errors assigned by the appellant, who was the complainant below, are, in brief, that the court erred in dismissing the bill, thereby refusing to quiet the title of the realty in complainant, and in granting a decree for specific performance upon the cross-bill.

It is admitted in the brief of counsel that the case is to be determined by the construction to be given to the clause of the contract of sale which provides that "if any title to any part of said real estate shall prove defective, and cannot be perfected within one year, and render the same unmarketable, so that the vendee cannot accept the same, then said parcel shall be withdrawn from this sale. * * *" The contention of counsel for appellant is that this clause in the contract is not to be treated as a provision for a forfeiture to be strictly construed, but that it is a provision for the benefit of both parties, to be fairly interpreted, and to be given a reasonable construction; or, to use the language of counsel: "The agreement is mutual, it is lawful, reasonable, and just, and there is no reason why it should not be given effect by the courts according to the intention of the parties, as expressed in the language they have used, provided the contin-

gency has arisen upon which the contract is to be determined. It has arisen, if complainant has done all that under the law he was bound to do to perfect his title."

In support of this contention counsel quote the language used in D., L. & W. R. R. Co. v. Bowns, 58 N. Y. 578, wherein it was said: "The more reasonable interpretation of the contract, and that most in harmony with the intent of the parties, and best calculated to promote justice between them, would only hold the plaintiff to the use of all reasonable and practicable means to procure and deliver coal according to the well-known usage and practice of those engaged in similar business, such as a jury would say would be reasonable and proper under the circumstances; such as the defendants might be presumed to have expected from the plaintiff at the time and under the circumstances in which the contract was made;" and, in reliance upon this case and other authorities cited, the conclusion of counsel is: "The words 'cannot be perfected' must therefore be construed as though they read 'cannot, after such efforts in good faith as are reasonable and proper for the purpose, be perfected.'"

We do not question the correctness of the contention that parties may include in contracts entered into by them provisions limiting the time of performance, or naming the contingencies or circumstances which may absolve either party from further performance, of the contract obligations, and we are content to accept the conclusion of counsel for appellant that the latter was only bound to use "such efforts in good faith as were reasonable and proper for the purpose" in clearing the title of the lands contracted to be sold from the incumbrance created thereon by the levy of the taxes and the sales made thereunder, and the point at issue is narrowed down to the inquiry whether the appellant, with respect to these taxes, made such efforts in good faith as were reasonable and proper to secure the removal of the incumbrance created thereby.

The obligation resting upon the appellant was in good faith to use all reasonable and proper efforts to perfect the title of the lands he had contracted to sell to the appellee. When this contract was entered into both parties knew that to perfect the title it was necessary, among other things, that the incumbrance created by the taxes and tax sales should be removed; and it is admitted by his counsel that appellant was bound to use in good faith all reasonable and proper efforts to that end, so that the contract of sale should be completed within a year from its date. It is clear beyond question that the tax incumbrance could have been promptly removed by the payment of the amount thereof, and this mode of action was open to the appellant. Instead of so doing, appellant, claiming that the assessment was void, brought suits to the December term, 1901, of the state district court, to secure the cancellation of the tax sales and certificates. When these suits were thus brought the appellant knew that, in the ordinary course of events, it would be impossible to bring these suits to a final termination within the year within which the contract of sale was to be completed. He knew that suits of this character, brought to the December term, 1901, could not be prepared for trial and determined in the trial court without the expiration of some

reasonable time, and he knew that after the district court had given its decision a right of appeal could be exercised within one year to the Supreme Court, and he knew that even if the trial court acted with unusual promptness in deciding the cases, and that if appeals should be promptly taken to the Supreme Court, there was no reasonable hope that the cases could be submitted to that court and a final decision be had by the 1st of April, 1902.

It cannot be otherwise, therefore, that when appellant, instead of clearing the title of the lands from the incumbrances created by the tax levy and the sales based thereon by paying the amount thereof, undertook to clear the title by the institution of the suits in question in the state district court, he well knew that by adopting this course he was initiating proceedings which could not be brought to a close within the year.

With respect to these taxes two methods were open to the appellant for removing the cloud created thereby on the lands he had contracted to sell—one being by payment of the amount due, and the other by securing the cancellation of the same through judicial action.

By making payment of the taxes the title could be cleared within the year limited in the contract. By initiating suits for cancellation, it would be impossible to perfect the cancellation of the taxes within the year. Was it open to the appellant to say that he was acting in good faith and using all reasonable and proper efforts to free the lands from the incumbrance of the taxes within the year stipulated, if he refused to pay the taxes, and instead of so doing brought suits for the cancellation thereof, which he knew could not be brought to a final conclusion until after the expiration of the year, and then rely on his inability to get a final decision within the year of the suits thus brought as a reason why he should be released from his contract to sell and convey the lands to the appellee?

In our judgment, the appellant would certainly be chargeable with lack of good faith, and a failure in his contract obligations to the appellee, if he availed himself of the delay in clearing the land from the tax incumbrance created by his own action in bringing suits to test the validity thereof under the circumstances developed in the evidence in this case. It was clearly within his right to discharge the taxes and cancel the sales by paying the amount due, and he obtained from the appellee, in addition to the sum of $2,000 paid down at the execution of the contract, an advance of $8,500, to be used in clearing off the incumbrances on the land. He thus had both the legal right to pay the taxes, and was furnished by the appellee with funds more than sufficient to pay the same.

He might fairly claim that, as he denied the validity of the taxes in question, it would be a heavy burden to compel him to pay the same instead of permitting him to test the validity thereof by suits in court; but it would nevertheless not be just to the appellee to hold that the appellant had the right to undertake the performance of his contract by a method, to wit, that of bringing suit to cancel the taxes, which would give him the absolute right to cancel his contract of sale with appellee. The appellant knew when he entered into the contract of sale that the lands were incumbered with the taxes, and he

agreed to use in good faith all reasonable efforts to release the land from the tax incumbrance, and he does not meet the obligation of his contract by refusing to pay the taxes, and undertaking to set them aside by judicial proceedings, which, of necessity, could not be brought to a final determination until after the lapse of the year named in the contract as the time within which the title should be cleared.

The inequity of the claim now asserted by appellant is not in the mere fact that he sought to get rid of the tax incumbrance by suit in court, but in the fact that he endeavors to evade his contract of sale by asserting that when the 1st of April, 1902, came around, the tax incumbrance had not been finally removed, because the right of appeal to the Supreme Court still existed against the decree in the district court of Stutsman county, and that he was therefore absolved from further obligation to cònvey the lands to the purchaser.

In effect, the contention of appellant is that, although he had bound himself to use, in good faith, all reasonable effort to clear the land from the incumbrance of the taxes, and although it was within his ability to remove the same by payment of the taxes, he could refuse so to do, and then release himself from the obligation to complete the sale by the claim that he had not succeeded in getting a final decree of the court within the year, when he well knew when he adopted that course that it would be impossible to carry the suits to a finality by the 1st day of April, 1902.

The evidence shows that the appellee not only paid promptly the $2,000 required to be paid at the execution of the contract, but subsequently advanced to appellant the further sum of $8,500, to be used in paying off the incumbrances on the land, and in September, 1901, the latter endeavored to procure a further advance of $20,000. Under the terms of the contract no obligation rested on the appellee to advance these sums, and, unless we assume that when he applied for the same the appellant expected to perfect the titles and convey the land in dispute to the appellee, he would be open to the charge of fraud, in that he was seeking to obtain money from the appellee upon the theory that he would in good faith perfect the title to the lands and convey the same to the appellee, when he had no present intention so to do, but purposed to rely on his inability to settle the tax incumbrance by judicial proceedings by the 1st of April, 1902, as a reason why he could withdraw the 15,000 acres from the contract and refuse to convey the same to the appellee.

If it be true that when the appellant sought these advances from the appellee upon the representation that the money was to be used in perfecting the title to the lands in the contract described his purpose was, not to pay the taxes and thus clear the land from the lien thereof, but to bring suits to have the same declared void, and then to rely on the pendency of the suits as a sufficient reason why he was not able to perfect the title by the 1st of April, 1902, thus giving him the right to withdraw these lands from the contract of sale, then the court would be justified in holding that the appellant had not in good faith used all reasonable and proper efforts to perfect the title to the lands, but, in refusing to clear the land by payment of the taxes and bringing the suits, he had done so with the purpose of

evading the proper performance of the contract of sale, and under such circumstances he could not avail himself of the year limitation contained in the contract, even under the construction of the limitation clause contended for by his counsel.

Furthermore, is there any sufficient ground for holding that the appellant was not absolutely bound to clear the land from the tax incumbrance by paying off the same, if that was the only means open to him for clearing the title by April 1, 1902? When the contract of sale was entered into appellant knew that the lands were subject to the incumbrance in question. He agreed, in effect, to use in good faith all reasonable means to clear the land within a year. Provision might have been made in the contract for testing the validity of the tax levies by judicial proceedings, thus giving the appellant the right to resort to that method of settling the title. No such provision was inserted in the contract. The appellant bound himself to use all reasonable effort to perfect the title within the year, and as the evidence shows there was but one method by which this could be accomplished, and that was by payment of the amount due, is it not the necessary inference that the contract of sale obligated the appellant to pay the taxes, that being the only course which would enable the contract of sale to be carried out? If the tax assessments and levy were valid, then the appellant owed the duty to the state and county to pay the taxes, and it would only be by payment that the appellant could perform his contract obligation to the appellee to perfect the title to the lands covered by the contract of sale.

As these taxes amounted to about $5,000, it doubtless seemed a hardship to the appellant to be required to pay them, if in fact they had not been legally assessed and levied, and, for the purpose of endeavoring to escape this necessity, the appellant sought to make some terms with appellee, as is evidenced by this letter of October 23, 1901, addressed to the appellee, wherein he wrote:

"I shall be in Fargo, Waldorf Hotel, Thursday evening of this week, 24th inst., & all Friday 25th inst. I should be much obliged if you would give me a definite reply there or see me regarding my recent letter on the subject of the contract of 1st April, 1901. I am able now to give you as good a title as I shall be able to give on 1st April, 1902, and, if not acceptable to you, let us adjust the matter at once, or, if acceptable, let us adjust the matter now."

Under date of October 24, 1901, the appellee replied to this letter saying:

"I expect to take the land as I agreed. If you are not able to complete title within the year, as specified in the contract, I shall expect to take it as soon as you can complete title. * * * If you are not able to fix it up the first of April I should not take any advantage on account of that. * * *"

Following this correspondence the appellant brought the suits to cancel the taxes at the December term, 1901, of the court in Stutsman county, and is it not the fair inference that the parties understood that the matter of the taxes was to be settled by the results of the litigation thus begun? It would certainly not have been open to the appellee to have declared the contract at an end on the 1st day of April, 1902, for the reason that the suits were not then finally de-

termined, in view of the statements in his letter of October 24, 1901, and it would be even more inequitable to hold that the appellant could terminate the contract of sale because the suits he had brought were yet undecided.

As already stated, the appellee, in order to prevent the tax sales from ripening into a title to the lands, in case it should be finally held that the taxes had been validly levied, bought the certificates from the owners thereof, and thus demonstrated that it was entirely within the power of the appellant to clear the land from the incumbrance of the taxes. It is made clear beyond all question that the only reason why the appellant did not perfect the title to the land, by payment of the taxes and redeeming from the sales, was that he hoped to avoid the outlay that course would have called for; and as the appellant brought the suits for cancellation knowing that the same could not be finally determined by April 1, 1902, after the appellee had stated in his letter of October 24, 1901, that he would take the land whenever the title was perfected, even though that should not be done within the year, it may be fairly held that the parties by their own conduct had waived strict performance of the conditions of the contract within the time named in the original contract.

Subsequently the appellee, to protect the title to the land in case it should be held that the levy of the taxes was valid, bought the tax sales certificates, and thus made it certain that the lands could be cleared from the taxes, no matter what the final decision was upon the question of the validity of the tax levy; and, in view of these circumstances, the contention of the appellant that he was entitled to withdraw the 15,000 acres of land from the contract, because he had in good faith used all reasonable effort to perfect the title by the 1st of April, 1902, but had been unable to do so, cannot be sustained, and our conclusion is that the facts of the case, as proven in the court below, justified the action of the circuit court in dismissing the bill of appellant, and in granting a decree of specific performance upon the cross-bill of the appellee.

Furthermore, since the submission of the case in this court, we have been informed that the Supreme Court of North Dakota has handed down an opinion in the cases appealed from the district court of Stutsman county reversing the decree of that court, and holding that the taxes assessed on the lands in dispute herein were lawfully assessed and levied.

If this is the final result upon the question of the validity of the taxes and tax sales, it demonstrates that the appellant did not take the course and the only one which would release the lands from the incumbrance of the taxes, to wit, by paying off the same, and certainly the appellant should not be permitted to avail himself of his own error to obtain a release from his contract obligation, thus benefiting himself and injuring the appellee, especially in view of the fact that, if the appellee had not protected the title to the lands by buying up the tax sales certificates, it is possible that the lands might have been lost to both appellant and appellee.

Under these circumstances, the order to be entered will be that the decree of the circuit court dismissing the original bill filed by the

appellant is affirmed; that the decree of the circuit court upon the cross-bill filed by the appellee, Daniel M. Robbins, granting him specific performance of the contract of sale, is affirmed; that the case be remanded to the circuit court, with instructions to ascertain whether the cases pending on appeal in the Supreme Court of North Dakota have been finally decided, and, if so, to make such changes in the particular provisions of the decree heretofore entered in this case as may be called for by such change in the situation of the parties, and as may be advisable to fully protect the rights of the parties hereto. /And it is so ordered.

### On Petition for Rehearing.

(November 14, 1903.)

PER CURIAM. A petition for rehearing has been submitted in this case on behalf of the appellant, in which, after quoting liberally from the opinion heretofore filed, counsel state that:

"In these remarks the mind of the court was focused on four erroneous assumptions of fact: (1) That the contract was valid and enforceable when made on April 1, 1901. (2) That the suits to set aside the taxes were not brought until after October 24, 1901. (3) That that method was resorted to by Sykes without the consent and acquiescence of Robbins. (4) That Robbins had furnished Sykes with money to be used for the express purpose of paying these taxes."

In support of the first proposition, that the court erred in viewing the case upon the assumption that the contract for the sale of the lands was valid and enforceable when made on April 1, 1901, it is said that when the contract was signed the appellant, Sykes, was in England; that the contract is signed by "D. M. Stewart, attorney in fact for Richard Sykes"; that the statutes of North Dakota provide that all agreements for the sale of realty, if made by an agent, are invalid unless the authority of the agent is in writing, subscribed by the party sought to be charged; that no authority in writing authorizing Stewart to make the contract is shown, and therefore the contract is void. Turning to the original petition filed in this case by the appellant, we find it therein stated that on the 1st day of April, 1901, he was the owner of the following described premises, giving the description thereof at length; "that on the 1st day of April, 1901, plaintiff made and entered into a contract with defendant, by the terms whereof the plaintiff agreed to sell and convey unto the defendant, upon certain terms and conditions and upon the full performance of said contract by the defendant on his part, all said premises"; and, further, "that said contract, so as aforesaid made by and between this plaintiff and defendant, was in writing, and was duly acknowledged, so as to entitle the same to record." In view of these positive statements contained in the petition which was the foundation of this case, what need was there for the defendant to introduce evidence showing that the agent, Stewart, had authority to sign the contract. No evidence upon this matter could be as weighty and conclusive as the averment made by the plaintiff in his petition that on the 1st day of April, 1901, he had entered into the contract in question with the defendant, and that the same was in writing

and duly acknowledged. The trial court was therefore clearly justified in disposing of the case upon the assumption that on the 1st day of April, 1901, the parties had entered into a valid written contract for the sale of the lands; the issue in dispute being the question whether, under the terms of the contract and the acts of the parties, the appellant was entitled to withdraw the larger part of the lands from the contract of sale, upon the expiration of a year from the date thereof. When the case was submitted to this court upon appeal, it was stated in the brief of appellant that "on April 1, 1901, the parties entered into a contract for the sale by Sykes to Robbins of 20,720 acres of land." In this condition of the record, we fail to see wherein it was error to determine the rights of the parties upon the assumption that on the 1st day of April, 1901, the parties had entered into a valid and enforceable contract for the sale of the lands in the contract described.

The second point urged is that the court was in error in stating that the suits for the cancellation of the tax sales were not brought until after the 24th of October, 1901. This criticism of the opinion filed is correct, as it is made plain in the petition for rehearing that the record shows that these suits were in fact brought about June 12, 1901; this mistake in the date being caused, as suggested by counsel, by the fact that there were suits brought in October, or later, by the appellant, for the cancellation of the tax sales on lands forming part of the 1,600 acres excluded from the operation of the decree entered, although named in the contract. This mistake as to the time when the suits for the cancellation of the taxes were instituted does not call for any change in the views expressed in the opinion upon the vital points of the case. The rights of the parties, as affected by the action of the appellant in bringing suits for the cancellation of the tax sales, do not depend upon the question whether these suits were brought in June or in October, 1901, but upon the fact that, when brought, the circumstances were such that it was impossible to carry them through to a final determination by April 1, 1902.

The third matter of fact touching which counsel claim the court was in error is with respect to the bringing of suits for the cancellation of the tax sales; it being said that the court was mistaken in holding "that that method was resorted to by Sykes without the consent and acquiescence of Robbins." In considering the terms of the contract, some consideration was given to the question whether the contract itself gave the right to the appellant to adopt a method of clearing the land from the tax incumbrance by selecting the plan of bringing suits for the cancellation thereof, and then to rely upon his inability to secure a final determination of the suits within a year as a reason why, under the terms of the contract, he had secured the right to declare the contract at an end. In dealing with this question, it was considered in the first instance from the point of view that Sykes had of his own motion chosen this course, and this is the only foundation for the claim that the court has erroneously held that these suits were in fact brought without the consent and acquiescence of Robbins; and that this was not the conclusion reached by the court upon a consideration of the evidence is shown by the fact that, after reciting

portions of the correspondence between the parties, it is stated in the opinion that:

"Following this correspondence, the appellant brought the suits to cancel the taxes at the December term, 1901, of the court in Stutsman county; and is it not the fair inference that the parties understood that the matter of the taxes was to be settled by the results of the litigation thus begun?"

There is strong ground to support the statement of counsel in the petition for rehearing "that the record fairly shows that there was an understanding or agreement between the parties that the cloud or incumbrance of the taxes should be removed by suit." This position was not taken or advanced by counsel in their briefs submitted on the hearing of the case, and naturally the opinion filed dealt with the points relied on in the submitted briefs; but, as already said, it was stated in the opinion that it was a fair inference derivable from the evidence that the parties had an understanding to the effect that the matter of the taxes was to be settled by the result of the suits brought by Sykes against the tax purchasers. If, on the submission of the case, counsel had taken the ground relied on in the petition for rehearing, to wit, that after the signing of the written contract for sale of the lands it had been mutually agreed between the parties "that the cloud or incumbrance of the taxes should be removed by suit," it would have obviated the necessity for considering at length what, under the terms of the written contract, was required of Sykes in the performance of his admitted obligation to use all reasonable efforts to clear the land from the tax incumbrance resting thereon, because in that view of the case, the rights of the parties would be dependent upon the meaning of this supplemental agreement. Assuming that such an agreement was had, what is the construction to be placed thereon?

When this agreement was entered into the situation was as follows: By a valid written contract Sykes was bound to use all reasonable efforts to clear the land he had agreed to sell from all incumbrances, being given a year within which to perfect the titles. Among other incumbrances was that created by sales of the land for nonpayment of certain taxes levied thereon. Sykes claimed that these tax sales and the levy of the taxes were illegal and void, and, while it was open to him to clear off the incumbrance by payment of the sums due, he was anxious to avoid incurring that expense. Under these circumstances he reached an understanding or agreement with Robbins to the effect "that the cloud or incumbrance of the taxes should be removed by suit." When this understanding was had, there was no reasonable possibility that the suits to be brought by Sykes could be carried through to a finality within the year named in the written contract, and therefore it must be held that the parties, in having this understanding, intended that the limit of a year should not apply to the matter of clearing the land from the taxes. The claim made in the petition for rehearing is that Robbins agreed that Sykes should have the right to remove the tax incumbrance by suit. This agreement secured the right to Sykes to test the validity of the taxes and tax sales by an appeal to the courts, and Robbins was in good faith

bound to allow him the time necessary for that purpose; and, on the other hand, Sykes was bound to carry the suits through to a final determination. Having agreed to undertake the removal of the tax liens by suits for that purpose, he did not fulfill the agreement by merely bringing the suits, and therefore, when the 1st of April, 1902, arrived, it was not open to him to claim that he had the right to withdraw the lands which were yet incumbered with the tax liens from the contract of sale. Having persuaded Robbins to accept this method of dealing with the tax liens, he was in duty bound to carry through the suits to a final determination, and that he had not done when he brought the present proceeding, in which he claims a decree in his favor on the theory that he had fully performed all the obligations resting on him with respect to clearing the lands from all liens or other incumbrances.

The fourth and last alleged assumption of fact which it is averred in the petition for rehearing was erroneous, and which aided in misleading the court, is "that Robbins had furnished Sykes with money to be used for the express purpose of paying these taxes." It is not stated in the opinion filed that any sum was furnished by Robbins for this express purpose; the statement being that the advance of $8,500 was made to be used in clearing off the incumbrances on the land. In the letter written by Robbins under date of June 6, 1901, to his attorneys, he states the terms under which he was willing to advance the $8,500, further stating that, if these terms were complied with, "I will pay him the $8,500 to be used in clearing up the title, as I understand that is what he wants the money for." Under date of June 8th, Sykes wrote to Robbins, saying:

"I have carried out the arrangement proposed in your letter of the 6th inst. * * * I have drawn upon you at sight to the order of the First National Bank of Fargo for $8,500 as arranged."

In his testimony as a witness Sykes states that he had represented to Robbins that the purpose for which he wished to obtain the $8,500 was to enable him to remove liens upon the land and to perfect the title thereto, and this evidence fully justifies all that is said in the opinion with respect to the $8,500 advanced by Robbins to appellant.

We have given a careful consideration to the petition for rehearing; but, finding nothing therein which satisfies us that the conclusion heretofore announced is erroneous, the same is overruled.